# In the United States District Court
## for the District of Utah, Central Division

| | |
|---|---|
| SAIID JIRSA,<br><br>         Plaintiff,<br><br>   vs.<br><br>UTAH DEPARTMENT OF TRANSPORTATION (UDOT), BOYD WHEELER, and ROBERT NASH, in their individual and official capacities,<br><br>         Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:03CV00425 JTG |

This matter is before the Court on defendants' Motion for Summary Judgment with regards to plaintiff's Supplemental Pleading.   Plaintiff is represented by David J. Holdsworth, and defendants are represented by Assistant Attorney General Glen E. Davies. Defendants' motion was fully briefed by both parties and oral argument was heard on February 15, 2006, after which the Court took the matter under advisement.

### Factual Background

In May 1990, Saiid Jirsa began work for UDOT's Structures Division as a civil engineer.  Jirsa was promoted to squad leader in January 1991.  However, in 2001, the Structures Division was reorganized in a way that changed work allocation and the chain of command.  The division was divided into two teams each lead by a senior design engineer.  Robert Nash was appointed to one senior design engineer position and the other was advertised.  Jirsa applied for

that position but was not chosen.  Subsequently, he was assigned to Nash's team.

Jirsa and Nash had an uneasy relationship.  In 1991, when Nash was assigned to Jirsa's squad, Nash refused to work under him.  The difficulties continued after Jirsa was assigned to Nash's team in 2001.  Between April 2002 and February 2004, Jirsa filed five grievances against Nash.  Further, Nash's evaluation of Jirsa's work in the 2001–2002 fiscal year was critical, although it concluded that Jirsa ultimately "Met Expectations."  In 2003, Nash reported that Jirsa "[Did] Not Meet Expectations."  Jirsa was angered by this assessment and resented the corrected action plan that it required.  In May 2003, Jirsa filed a federal suit under Title VII of the Civil Rights Act, and in June of that same year, he filed a Charge of Discrimination in Utah state court.

In 2001, Jirsa suffered from a variety of mental and physical maladies.  In January 2002, he sought medical treatment.  He visited Dr. Strong for gastro-intestinal symptoms and Dr. Szykula for his psychological afflications.  At that time, Dr. Strong prescribed Paxil for his stress and anxiety.  These doctors agreed that Jirsa's work environment contributed to his symptoms.

Jirsa took a medical leave of absence from September 16 to December 4, 2003. When he returned, Jirsa requested an accommodation for his physical conditions. Representatives of UDOT discussed a transfer with Jirsa, but would only grant it if he would drop his lawsuits. Jirsa refused.  On June 3, 2004, Jirsa again took a leave of absence.  On May 10, 2005, UDOT notified Jirsa that unless he could produce a doctor's release which verified that he could return to work and perform his job, he would be terminated on June 3, 2005, pursuant to state policy. Dr. Szykula had written days earlier that Jirsa could not return to his old work environment, and

that Jirsa would be unable to return to work before August.  After meeting with John Njord,

UDOT's executive director, Jirsa was terminated on June 30, 2005.

### STANDARD FOR SUMMARY JUDGMENT

Summary Judgment is appropriate if all the evidence viewed in the light most

favorable to the non-moving party fails to create any "genuine issue of material fact."  Fed. R.

Civ. P. 56(c).  All reasonable inferences must be drawn in favor of the non-moving party.

*Jeffries v. St. of Kansas*, 147 F.3d 1220, 1228 (10th Cir. 1998).  If there is no disagreement over

"facts that might affect the outcome of the case," summary judgment is appropriate.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).

### ANALYSIS

### A.   THE REHABILITATION ACT

Under the Rehabilitation Act, "no otherwise qualified individual with a disability .

. . shall, solely by reason of her or his disability, be excluded from the participation in, be denied

the benefits of, or be subjected to discrimination under any program or activity that receives

Federal financial assistance."  29 U.S.C. § 794(a) (2005).  Under this requirement, no "agency or

other instrumentality of a state or local government" may refuse a disabled individual a

reasonable accommodation. 29 U.S.C. § 794(b)(1)(a) (2005).

Defendants claim that summary judgment is appropriate because plaintiff has

failed to present evidence from which a reasonable jury could find that plaintiff was disabled or

that he was and is a qualified individual.  However, the Court finds sufficient support for

plaintiff's position in the record to deny the motion.

3

Under the Rehabilitation Act, one is disabled if they have one or more "physical or mental impairment which substantially limits one or more of such person's major life activities." 29 U.S.C. § 705(20)(B) (2005). This definition encompasses three requirements: the plaintiff must have an impairment, that impairment must limit his or her ability to engage in a major life activity, and the limitation must be severe. When presented with a Motion for Summary Judgment, the court must determine whether evidence supports the assertion of impairment, and if so, whether the allegedly limited activities are legally recognizable as major life activities. However, the final question – whether the alleged limitations are severe – must be left to the jury. *Bristol v. Bd. of County Comm'rs of Clear Creek*, 281 F.3d 1148, 1158-59 (10th Cir. 2002).

Plaintiff's allegations of impairment are well-supported in the record. Medical data suggests that he suffers from a variety of psychological conditions including an underlying obsessive compulsive disorder, post-traumatic stress disorder, and more. Further, he has adduced evidence to support his claims that these impairments have impacted a variety of recognized major life activities including working, sleeping, and bladder and bowel control. Defendants contend that plaintiff's symptoms were "transient" and thus legally insufficient to show a substantial effect on a major life activity. However, plaintiff's evidence shows that at least some of his impairments stem from "underlying" psychological conditions that persisted even when he was away from work. The determination of severity of plaintiff's impairments must be made by the jury.

Plaintiff also presents a triable issue of fact as to whether he was a qualified

individual.  The Rehabilitation Act only protects those "who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires . . .."  42 U.S.C. § 12111(8) (2005).  Defendants claim that plaintiff's

inability to attend work regularly precludes him from performing the essential functions of any

job.  Defendants point to a recent Eleventh Circuit case in which the court held that an individual

who represented that she was "totally disabled" was not a qualified individual because by her

own admission she was not able to work at all.  *Slomcenski v. Citibank N.A.*, 432 F.3d 1271,

1280-81 (11th Cir. 2005).  However, Jirsa exhibited both a willingness and ability to work at the

time of the initial transfer request.  Evidence also suggests that plaintiff's impairments may have

been minimized by a transfer.  Plaintiff claimed that he could work, and shortly after UDOT

refused to accept plaintiff's initial transfer request, Dr. McCann denied that plaintiff was "totally

disabled."  Any attempt to quantify whether these accommodations would be successful or

reasonable is pure speculation.  As such, a reasonable jury could find in plaintiff's favor as to that

issue.

Defendants also contend that the transfer plaintiff requested was unrelated to the

major life activities in which he claims to be impaired, and thus he may not recover.  Defendants

cite a recent Eighth Circuit case in which the court held that "there must be a causal connection

between the major life activity that is limited and the accommodation sought."  *Nuzum v. Ozark*

*Automotive Distributors, Inc.*, 432 F.3d 839, 848 (8th Cir. 2005), *quoting Wood v. Crown Redi-*

*Mix*, 339 F.3d 682, 687 (8th Cir. 2003).  First, it should be noted that the Tenth Circuit has not

adopted this rule.  Secondly, even if the rule applied in this jurisdiction, the plaintiff has

5

produced evidence from which a jury could find that his mental impairments and all the limitations allegedly caused are sufficiently related to plaintiff's work environment. Defendants admit as much when they characterize plaintiff's impairments as damages in his Title VII suit. Finally, even if the Court accepted the argument that many of plaintiff's impairments were not causally related to the accommodation requested, summary judgment would still be inappropriate because plaintiff could show that his impairments had a substantial impact on the major life activity of work, which is clearly related to the transfer.[1]

B. WERE THE PLAINTIFF'S IMPAIRMENTS SUPERVISOR SPECIFIC?

Defendants argue that summary judgment is appropriate because plaintiff's impairments were all caused by his work environment. In order for a plaintiff to prove that he or she is substantially limited in the major life activity of work, he or she must show that the impairments prevent employment in a broad class of jobs. Defendant relies on a line of Tenth Circuit cases that granted summary judgment for the defendant because the plaintiff's impairments were caused by interaction with their supervisors. If plaintiff's symptoms "merely [prevent] him from working under a few supervisors within the organizational structure," that plaintiff is not substantially limited in his or her ability to work because the only jobs he or she are unable to perform are those over which their supervisor has authority. This set is "far too narrow to constitute a [broad] 'class of jobs.'" *Mackenzie v. City and County of Denver,* 414 F.3d 1266, 1274–1275 (10th Cir. 2005), *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1176 (10th Cir. 1997). According to this approach, the crucial inquiry is whether the impairment was severe enough to

---

[1] In *Nuzum*, the court had already found plaintiff/petitioner's impairments legally insufficient to support a substantial limitation on Nuzum's ability to work. 432 F.3d at 847–848.

prevent plaintiff from engaging in a broad range of jobs outside her or his supervisor's direction, not whether interactions in the workplace caused the impairments.

Defendants claim that summary judgment is appropriate since plaintiff's impairments developed as a result of his relationship with his supervisor.  This argument fails for two reasons. First, plaintiff's medical evidence suggests that his impairments, whether or not they were *caused* by his work environment, had the *effect* of preventing him from working in a broad range of jobs. Doctors McCann and Szykula agree that plaintiff is affected by underlying paranoia and obsessive compulsive disorder that make it difficult for him to relate to others in the work place. Syzkula also suggests that it is difficult for plaintiff to deal with criticism and workplace stress. Dr. Szykula claimed that "his obsessive compulsive patterns might interfere with his functioning on [sic] a new job, especially if the new job is similar to the job he had."  This evidence forms a factual basis from which a reasonable jury could find that Jirsa was unable to perform a broad range of jobs in which his work would be critically assessed by supervisors or in which he would be required to interact with others on a regular basis.

Secondly, the holdings in *Mackenzie* and *Siemon* are limited to the major life activity of work.  Regardless of whether his impairments are supervisor specific, plaintiff overcomes summary judgment by producing evidence that his impairments impact other major life activities. Plaintiff's medical evidence indicates that his impairments affect his bowel and bladder control, his relationship to others, his ability to sleep, and more.

C.   CONCLUSION

Defendants assert that plaintiff is on the "horns of a dilemma."  Either Jirsa is not disabled because he would be able to attend work if only he had different supervisors or he is not qualified because he would not be able to work regularly even if he were granted a transfer.  The argument is compelling, but it should be made before a jury.  The law forces plaintiff to walk a fine line, but a reasonable jury could find that plaintiff's various maladies constituted a substantial or severe limitation on several major life activities *as well as* that a transfer may have ameliorated the impact that the underlying impairments would have on his ability to carry out life's most basic functions.

The Court finds that Jirsa has submitted evidence sufficient to support his claim under the Rehabilitation Act.  It is now a question for the jury to determine if the impairments substantially limited one of more of plaintiff's major life activities, and whether the limitations are severe.  The Court also finds substantial evidence to support plaintiff's contention that his impairments are not supervisor specific.  Accordingly, it is hereby

ORDERED, that defendants' Motion for Summary Judgment is DENIED in all particulars.

DATED this 7th day of March, 2006.

_____
J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE